IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PAMELA D. GREEN AND MARCUS GREEN                    PLAINTIFFS

V.                                    CIVIL ACTION NO. 1:19-cv-076-NBB-DAS

SPECIALIZED LOAN SERVICING, LLC                      DEFENDANT

## MEMORANDUM OPINION

This cause comes before the court upon the defendant Specialized Loan Servicing, LLC's Motion for Summary Judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

### Factual Background and Procedural Posture

The plaintiffs allege that defendant Specialized Loan Servicing, LLC ("SLS"), as a mortgage servicer, fraudulently enlists insurance providers to supply bulk insurance policies over the catalogue of properties in the SLS inventory. This arrangement allegedly allows SLS to place overpriced insurance on property to secure a lender's collateral. The plaintiffs' First Amended Complaint asserts that SLS fraudulently placed such unnecessary and expensive insurance on their property in Prentiss County, Mississippi, and that the resulting fees directly caused a false default on the loan that led to fraudulent and violative collection efforts, including the institution of foreclosure proceedings, harassing telephone calls, and false credit reporting.

In 1998, the plaintiffs took out a mortgage loan on a property located in Baldwyn, Mississippi. The plaintiffs refinanced their home in 2006 with Countrywide Home Loans, Inc. The mortgage documents grant the lender the right to place lender protection insurance ("LPI") on the mortgage if the plaintiffs fail to maintain the amount of insurance the lender requires. The original lending company was later acquired by Bank of America, which transferred the

servicing of the plaintiffs' mortgage to SLS in December 2013. Though the plaintiffs allege in their First Amended Complaint and argued at the 12(b)(6) stage of this litigation that SLS wrongfully and inexplicably increased their mortgage payment from $486.35 to $755.71 to cover the cost of an unnecessary force-placed LPI policy immediately upon taking over the servicing of the loan, the developed record at the summary judgment stage now reveals that the loan had an active and existing LPI policy in place when the mortgage was transferred from Bank of America to SLS. Further, Bank of America increased the mortgage payment to $755.71 effective September 1, 2013, prior to the transfer to SLS in December 2013.

By July 2014, SLS had determined that the plaintiffs maintained their own insurance coverage through State Farm and terminated the LPI policy. The record reflects that SLS has not instituted or maintained an LPI policy on the property since July 2014. SLS has paid for the plaintiffs' property insurance coverage with State Farm through the plaintiffs' escrow account since 2014.

The plaintiffs initially alleged that SLS continued to charge them for unnecessary LPI coverage, which resulted in unnecessary fees and expenses leading to a default of the loan. According to the plaintiffs, these default events resulted in allegedly unlawful collection activities and negative credit reporting activities. The plaintiffs further allege SLS has instigated multiple foreclosure sales based on these false and fraudulent delinquencies since 2014. According to the plaintiffs, the foreclosure sales would be scheduled and published only to be canceled at the last minute upon the plaintiffs' threats of legal action.

The plaintiffs filed this lawsuit against SLS on April 18, 2019, and filed their First Amended Complaint on July 19, 2019. The First Amended Complaint asserts claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, fraud,

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*,

violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, breach of

contract, and breach of the duty of good faith and fair dealing. SLS subsequently filed a motion

to dismiss pursuant to Rule 12(b)(6), which this court denied under the more lenient standard

applicable to that motion.

After SLS filed the present summary judgment motion, the plaintiffs voluntarily

dismissed their TCPA and FCRA claims, leaving only their claims of fraud, FDCPA violations,

breach of contract, and breach of the duty of good faith and fair dealing. The court will address

these claims below.

<u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of

showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to

"go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue

for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts

in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*,

369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-

movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied

that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

<u>Analysis</u>

On August 6, 2012, the plaintiffs filed for protection under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Mississippi. The plaintiffs' bankruptcy was discharged by the bankruptcy court on January 3, 2018. At the 12(b)(6) stage of this litigation, SLS challenged the plaintiffs' allegations and claims accruing during the pendency of the plaintiffs' bankruptcy on the grounds that the bankruptcy code and rules impose an "affirmative duty to disclose all assets, including contingent and unliquidated claims. The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999).

In response, the plaintiffs unequivocally stipulated that "this lawsuit only seeks legal redress for causes of action that have accrued, in whole or in part, from January 4, 2018, through the present." [Doc. 23]. This court relied on that stipulation in denying the defendant's motion to dismiss, and the plaintiffs do not dispute that the stipulation remains binding on their claims. Accordingly, the court finds that any claim accruing before January 4, 2018, must be dismissed as a matter of law.

The court also notes at the outset that the claims which the plaintiffs assert accrued after January 4, 2018, are vague and unsupported with any proper citation to the summary judgment record. Instead, the plaintiffs respond to the defendant's assertions and its proper citations to the record in support thereof by denying those assertions "based upon lack of substantial

4

information" and "based upon lack of knowledge" and even at times with only a simple "Denied."

It is axiomatic that a non-moving party's burden of responding to material facts in support of summary judgment is not discharged by mere allegations or denials. *Ray v. Dufresne Spencer, LLC*, 2018 WL 356208, at *2 (N.D. Miss. Jan. 10, 2018). *See also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence). Moreover, "the court is under no obligation to comb or scour the record to find support for [the plaintiffs'] response or evidence that creates a genuine dispute as to a material fact." *Holmes v. North Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 540 (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). When the nonmovant fails to direct the court to evidence in the summary judgment record, "that evidence is not properly before the district court." *Id.* (quoting *Malacara*, 353 F.3d at 405).

In support of their fraud claim, the plaintiffs assert that SLS intentionally and knowingly made representations about voluntary insurance coverage and made attempts to collect other fees that were not owed. The record now makes clear, and it is uncontested, that SLS inherited a force-placed insurance policy on the plaintiffs' mortgage when servicing was transferred to SLS from Bank of America in December 2013. SLS confirmed in July 2014 that the plaintiffs had sufficient insurance coverage on the property and canceled the force-placed LPI policy instituted by the prior servicer. It is undisputed that SLS has paid for insurance coverage on the property

on the plaintiffs' behalf to their preferred insurer, State Farm, since July 2014 and has maintained no other insurance coverage or charged the plaintiffs for any other insurance coverage since April 2014. Further, SLS credited back all payments and fees due and owing between September 1, 2013, and November 30, 2014, in total, $10,910.96, to the plaintiffs in April 2019.

Any alleged representation regarding voluntary insurance coverage and fees that were not owed related to insurance coverage would have occurred during the period that a force-placed policy was in effect – in 2013 and 2014. "A fraud claim accrues … upon the consummation of the fraud." *Sanderson Farms, Inc. v. Ballard*, 917 So. 2d 783, 789 (Miss. 2005). As the plaintiffs have stipulated that they are not seeking legal redress for claims that accrued prior to January 4, 2018, their fraud claim must fail for this reason as well as other reasons addressed below.

It is unclear what actions of SLS taken since January 4, 2018, the plaintiffs allege constitute fraud, and that lack of clarity in itself is fatal to any potential fraud claims, as it is well-settled that to establish a claim of fraud, a plaintiff must "at a minimum set forth the time, place, and contents of the false representation, the identity of the person making the representation, and what the person making the misrepresentation gained by making it." *Campbell v. DLJ Mortgage Capital, Inc.*, 628 F. App'x 232, 235 (5th Cir. 2015). The plaintiffs have failed to satisfy these requirements, and their fraud claim must be dismissed for this reason.

Additionally, even if the court were to give the plaintiffs the benefit of the doubt and assume, *arguendo*, that they somehow overcame the aforementioned failings and properly pled a fraud claim accruing after January 4, 2018, the allegations in their First Amended Complaint negate a key element of a fraud claim: reliance. *See Allen v. Mac Tools, Inc.*, 671 So. 2d 636,

6

642 (Miss. 1996) (Among the elements of a fraud claim under Mississippi law are "the hearer's reliance on the representation's truth [and] the hearer's right to rely thereon…."). The plaintiffs' First Amended Complaint is replete with assertions that the plaintiffs refuted and challenged the defendant's alleged misrepresentations from the outset. *See, e.g.*, Doc. 16, pp. 14-15, 20. They cannot now claim that they relied on these representations to their detriment. The plaintiffs' assertions are inconsistent with a fraud claim.

The plaintiffs next allege that SLS violated the FDCPA by making harassing phone calls, communications at times or places known to be inconvenient, and engaged in conduct to harass, in addition to other oppressive and harassing collection activity. As an initial matter, any claim for violations of the FDCPA must be brought within one year from the date on which the violation occurs. 15 U.S.C. §1692k(d). Any actions allegedly taken by SLS in violation of the FDCPA prior to April 18, 2018, one year prior to the plaintiffs' filing of the original complaint, would therefore be barred by the statute of limitations.

Regarding any calls or communications after April 18, 2018, the record before the court, including SLS activity logs associated with the plaintiffs' account and the plaintiffs' own cell phone records dating back to 2013, reveals that SLS and the plaintiffs did engage in regular communications. More specifically, however, the record shows that the plaintiffs called SLS more times than SLS called the plaintiffs, and none of the calls placed by SLS to the plaintiffs fall outside the window of "convenient time" as provided by the statute. Indeed, plaintiff Pamela Green testified in her deposition that she was unsure whether any calls were placed outside the statutory window or whether SLS engaged in any conduct intended to harass, oppress, or abuse her. Plaintiff Marcus Green testified that he could not recall any specific calls from SLS,

including whether they took place before or after January 4, 2018. This equivocal testimony is insufficient to show a genuine issue of material fact in this matter.

To prevail on an FDCPA claim, the plaintiffs must prove that they are (1) "'consumers' within the meaning of the statute; (2) the debt at issue arises out of a transaction entered into primarily for personal, family, or household purposes; (3) [SLS] is a 'debt collector' within the meaning of the statute; and (4) [SLS] violated a provision of the FDCPA." *Wood v. North Miss. Medical Center, Inc.*, 2020 WL 8269547, at *3 (N.D. Miss. Oct. 23, 2020). Because the record reveals no activity on the part of SLS that rises to the level of a violation of the FDCPA, the claim must fail.

The plaintiffs also assert a claim of breach of contract in their First Amended Complaint which specifically refers to the defendant's charging the plaintiffs for unnecessary insurance. The plaintiffs have not put forth any admissible evidence showing that SLS breached the contract related to insurance coverage after 2014 when it canceled the force-placed insurance policy in favor of the plaintiffs' State Farm coverage. It is undisputed that SLS has not charged the plaintiffs for force-placed insurance or had a force-placed insurance policy on the plaintiffs' account since 2014. Accordingly, any breach of contract claim arising from the facts of this case is barred by the statute of limitations. Mississippi's statute of limitations for breach of contract is three years. *Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1106 (Miss. Ct. App. 2014) (citing Miss. Code Ann. § 15-1-49).

Further, while monetary damages are not an element of a breach of contract claim, a plaintiff seeking monetary damages must prove those damages to recover. *See Business Communications, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012). The record reflects that SLS refunded all charges related to the plaintiffs' force-placed insurance, plus additional principal,

interest, and tax payments, in April 2019. The plaintiffs have directed the court to no evidence of additional damages related to a breach of contract claim; nor can they at this point, as will be addressed more comprehensively below.

Finally, the plaintiffs assert a claim for breach of the duty of good faith and fair dealing. "The duty of good faith and fair dealing arises from the existence of a contract between the parties." *American Bankers Ins. Co. of Florida v. Wells*, 819 So. 2d 1196, 1207 (Miss. 2001). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness, or reasonableness. Bad faith, in turn, requires a showing of more than bad judgment or negligence; rather, bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity." *McDaniel v. Citizens Bank*, 937 So. 2d 26, 29 (Miss. Ct. App. 2006).

The plaintiffs have presented no evidence demonstrating that SLS acted in bad faith or committed conscious wrongdoing. It is uncontested that SLS inherited a lender placed insurance policy when the plaintiffs' mortgage was transferred to SLS from Bank of America in December 2013. Thereafter, SLS took affirmative steps to cancel this policy and instead collect funds to pay the plaintiffs' preferred insurer, State Farm. SLS has been paying that State Farm coverage through the plaintiffs' escrow account in an amount charged by State Farm since that date. These uncontested facts do not support a claim for breach of the duty of good faith and fair dealing. Further, the plaintiffs have failed to direct the court to any admissible evidence which would support such a claim accruing after January 4, 2018 – the date after which, the plaintiffs stipulate, all claims in this action must have accrued.

As a final but important note, the court finds that even if the plaintiffs' claims could survive the barriers and shortcomings addressed above as to liability, the plaintiffs would be

unable to support any claim of damages resulting therefrom. The plaintiffs seek actual, statutory, and punitive damages from SLS for their alleged claims, including medical damages related to plaintiff Pamela Green's alleged anxiety and plaintiff Marcus Green's alleged heart condition. It has already been determined that the plaintiffs are prohibited from utilizing expert testimony in this case, even for treating physicians who would testify as non-retained expert witnesses. The magistrate judge has found the plaintiffs to be in violation of Federal Rule of Civil Procedure 26(a)(2)(C), which requires that "the subject matter … and a summary of the facts and opinions to which the witness is expected to testify" be disclosed. The court found that "the plaintiffs have not properly designated any non-retained expert witnesses or disclosed the identities of these providers – much less the substance of their testimony – to SLS in discovery." *See* Order Granting Motion to Disallow Plaintiffs' Use of Experts for Failure to Make a Timely Disclosure [Doc. 56, p. 5].

Rather than comply with Rule 26, the plaintiffs responded to not only the aforementioned designation of experts but to the gross majority of the defendant's requests for production by stating, "All responsive documents to this request are either already in the possession or control of SLS, third parties … or they have been produced by the Greens." *See, e.g.*, Doc. 46-2. In other words, the plaintiffs intend to rely on discovery that SLS obtained by issuing subpoenas *duces tecum* to numerous third parties because the plaintiffs refused to produce those documents in accordance with the Federal Rules of Civil Procedure, despite those documents being in the plaintiffs' possession, custody, or control. As the magistrate judge stated, "The court has never encountered a plaintiff that relied on the defendant to obtain the very proof the plaintiff requires to establish its case." [Doc. 56, p. 5]. Finding that SLS would "undeniably be prejudiced," the magistrate judge found the plaintiffs' lack of compliance with the Federal and Local rules

10

"neither substantially justified nor harmless" and prohibited use of the relevant evidence.  [Doc. 56, p. 5-6].

Mississippi law provides that while experts may not be required to prove causation that may be understood with common sense, injuries that are medically complicated – such as cardiological intervention – require expert testimony.  *Savage v. Pilot Travel Centers, LLC*, 464 F. App'x 288, 290 (5th Cir. 2012).  The court finds that the alleged exacerbation of plaintiff Marcus Green's heart condition falls within the scope of injuries contemplated by the term "medically complicated."  As to plaintiff Pamela Green's alleged anxiety diagnosis, the First Amended Complaint is silent.  The plaintiffs have therefore failed to "plead sufficient facts to provide notice to a defendant of the factual basis for the plaintiff's claims."  *Alexander v. Hall*, 2021 WL 800840, at *3 (N.D. Miss. Mar. 2, 2021) (citing *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)).  Further, the plaintiffs have failed to disclose any medical bills or estimated medical charges to support their claim of damages.  Thus, even if the plaintiffs were able to testify as to their medical injuries allegedly resulting from the defendant's actions, they have no evidence to present with respect to the alleged monetary damages associated with such injuries.

Damages must be shown with reasonable certainty and not based merely on speculation and conjecture.  *Burnham v. Joseph*, 482 So. 2d 1151, 1153 (Miss. 1986).  "[D]amages may only be recovered when the evidence presented at trial removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty."  *Univ. of Southern Miss. v. Williams*, 891 So. 2d 160, 176 (Miss. 2004). Lack of evidence in the record supporting a claim of damages warrants a grant of summary judgment.  *See, e.g.*, *Marin v. Gilberg*, 2009 WL 699947, at *2-3 (S.D. Tex. Mar. 11, 2009).

11

In the present case, the plaintiffs have produced no medical bills, have forfeited the ability to present expert witnesses, and at their respective depositions were unable to quantify any source or measure of compensatory damages. Accordingly, due to their inability to prove damages and in addition to the reasons set forth above, the court finds that the defendant's motion for summary judgment should be granted.

<u>Conclusion</u>

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well taken and should be granted. A separate order in accordance with this opinion will issue this day.

This 8th day of March, 2022.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE